IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

```
FILED
IN OPEN COURT

NOV 1 8 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **Criminal No. 1:08cr461 (LMB)** |
| | ) | |
| v. | ) | |
| | ) | **Count 1: 18 U.S.C. § 371** |
| MICHAEL MITRY HADEED, JR. | ) | **(Conspiracy)** |
| | ) | |
| Defendant. | ) | **Count 2: 18 U.S.C. § 1001 and 2** |
| | ) | **(Material False Statement and Aiding,** |
| | ) | **Abetting, and Causing an Act to be Done)** |
| | ) | |
| | ) | **Counts 3 and 4: 18 U.S.C. § 1546(a) and 2** |
| | ) | **(Immigration Fraud and Aiding, Abetting,** |
| | ) | **And Causing an Act to be Done)** |

## I N D I C T M E N T

November 2008 Term - at Alexandria

## INTRODUCTION

The Grand Jury charges that:

## COUNT ONE
### (Conspiracy)

At all times relevant to this Indictment, unless otherwise specified:

### General Allegations

#### Parties

1.      The defendant **MICHAEL MITRY HADEED, JR.** was a licensed attorney

practicing law in the Eastern District of Virginia.

2.      The defendant practiced law as a partner with a law firm located at 5501 Backlick

Road, Suite 220, Springfield, Virginia.

3.    The King of Pita Bakery was a full-service bakery located at 6460 General Green Way, in Alexandria, Virginia.

4.    The Virginia Employment Commission was an agency of the government of the Commonwealth of Virginia and maintained offices in Richmond, Virginia.

5.    The United States Department of Labor was an agency within the executive branch of the government of the United States.

6.    The United States Immigration and Naturalization Service ("INS"), whose functions relevant to this Indictment are now within the Citizenship and Immigration Services ("CIS") of the United States Department of Homeland Security, was an agency within the executive branch of the government of the United States.

7.    CIS, which came into existence in March 2003, was an agency within the executive branch of the government of the United States.

8.    The United States Department of State was an agency within the executive branch of the government of the United States.

9.    The term "alien," as used in this Indictment, consistent with its use in the Immigration and Nationality Act, 8 U.S.C. §101(a)(3), refers to an individual who was not a United States citizen.

<u>Employment-Based Immigrant Visas</u>

10.    An alien seeking to immigrate to the United States could apply for an immigrant visa to perform skilled or unskilled labor in the United States.  If approved, this employment-based immigrant visa allowed the alien to come to the United States, or if already in the United

2

States, to stay and obtain Lawful Permanent Resident status. A Lawful Permanent Resident, also referred to as a "green card holder," could work and live in the United States indefinitely, and after five years could apply for United States citizenship.

11.    To obtain an employment-based immigrant visa in the United States, the alien's prospective employer first had to obtain from the United States Department of Labor a certification that there were insufficient qualified United States workers available and willing to perform the labor in question, and that employing the alien would not adversely affect the wages and working conditions of similarly-employed United States workers.

12.    To obtain a certification, the alien's prospective employer had to file with the United States Department of Labor an **Application for Alien Employment Certification**, known as a **Form ETA-750**. This Application had to be completed and signed under penalty of perjury by both the prospective employer and the alien. In part A of the Application, the employer had to represent that the employer had a specific job vacancy to fill; describe the nature, location, terms, and requirements of the job; and list the name, address, and immigration status of the alien seeking the job. In part B of the Application, the alien had to list his or her name, address, biographic information, and immigration status; describe his or her experience and qualifications for the job the employer was offering; and represent that he or she was willing and qualified to accept the job.

13.    Once the ETA-750 Application was signed and completed, the alien's prospective employer had to file the Application with a state employment agency in the state or locale where the vacancy existed. In Virginia, this agency was the Virginia Employment Commission. The state employment agency reviewed the Application for completeness, ensured that the employer

3

was offering the correct prevailing wage for the job listed in the Application, and reviewed any recruiting and advertising the employer might be required to do as part of the certification process. Once the state agency completed this portion of the certification process, the agency forwarded the Application to the appropriate United States Department of Labor regional office for final determination. The regional office reviewed the Application and then either certified the Application or denied the Application. A certified ETA-750 Application was referred to as a "Labor Certification."

14.     If the United States Department of Labor certified the Application, the alien's prospective employer could then file with the INS, on behalf of the alien, an **Immigrant Petition for Alien Worker**, known as a **Form I-140**. This Petition had to be completed and signed under penalty of perjury by the prospective employer, and a Labor Certification had to be attached to it. If approved, this Petition enabled the alien either (1) to apply to obtain an employment-based immigrant visa at a United States Consulate abroad, which would allow the alien to enter the United States as a Lawful Permanent Resident, or, (2) if the alien was already residing in the United States, to apply to the INS to adjust his or her status to that of Lawful Permanent Resident by filing an **Application to Adjust Status**, known as a **Form I-485**.

15.     Once a Form I-140 was approved, if the prospective employment-based immigrant was overseas, to obtain a visa for the immigrant, the prospective employer was required to submit an **Affidavit of Support Under Section 213A of the Act**, known as a **Form I-864**, to the Department of State. The prospective employer – that is, the sponsor – had to show that it had enough income and assets to support the applying immigrant. By signing a Form I-864, the sponsor agreed to use its resources to support the intending immigrant(s) named in this

4

form, if it became necessary. This Application had to be signed under penalty of perjury by the applicant and the preparer.

16.     All foreign nationals who wished to immigrate to the U.S. permanently on an immigrant visa had to submit an **Application for Immigrant Visa and Alien Registration,** known as a **Form DS-230,** at the U.S. Consulate. The Department of State used the facts provided on this form to determine an individual's classification and eligibility for an immigrant visa. If an individual was issued an immigrant visa and subsequently admitted to the United States as an immigrant, the Department of Homeland Security used the information on this form to issue a Permanent Resident Card, and the Social Security Administration used the information to issue a social security number and card.

17.     For those prospective employment-based immigrants who were already residing in the United States, one could apply to the INS to adjust his or her status to that of Lawful Permanent Resident by filing an **Application to Adjust Status,** known as a **Form I-485.** That Application had to be signed under penalty of perjury by the applicant and the preparer. While the form I-485 was pending adjudication by INS, an alien was eligible to file an **Application for Employment Authorization,** known as **Form I-765.** If the form I-765 was approved, the alien was able to obtain an Employment Authorization Document ("EAD") as evidence of authorized stay or employment in the United States. This Application had to be signed under penalty of perjury by the applicant and the preparer.

18.     Until April 30, 2001, an alien residing in the United States could become a Lawful Permanent Resident based upon an approved I-140 Petition, even if he or she was illegally in the United States. Thereafter, federal legislation, known as the Legal Immigration and Family

5

Equity Act (66 FR 29673 (June 1, 2001)) or LIFE Act, barred any alien illegally in the United States from becoming a Lawful Permanent Resident based upon an approved I-140 Petition, unless an ETA-750 Application had been filed on the alien's behalf on or before April 30, 2001.

<u>Forms</u>

19.     Forms DS-230, ETA-750, I-485, and I-765 were applications, a Form I-140 was a petition, and a Form I-864 was an affidavit, all required by the immigration laws of the United States and the rules prescribed thereunder.

## The Conspiracy

20.     From in or about December 1999 through in or about May 2005, within the Eastern District of Virginia and elsewhere, the defendant, **MICHAEL MITRY HADEED, JR.,** knowingly and willfully combined, conspired, confederated, and agreed with others known and unknown to the Grand Jury, to commit the following offenses against the United States:

(a)     to knowingly use, attempt to use, possess, obtain, accept and receive an immigrant visa, alien registration receipt card, and other document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to have been procured by means of a false claim and statement and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18 United States Code, Section 1546(a);

(b)     to make materially false, fictitious, and fraudulent statements and representations in immigration documents filed with the Virginia Employment Commission, the United States Department of Labor, the United States Department of State, the Citizenship and Immigration Services of the United States Department of Homeland Security, and the Immigration and Naturalization Service, in violation of Title 18 United States Code, Section 1001; and

(c)     to defraud the United States by interfering with and obstructing a lawful

government function, that is, the regulation and control of immigration of aliens into and within the United States, by deceit, craft, trickery, and dishonest means, in violation of Title 18 United States Code, Section 371.

## Objects of the Conspiracy

21.     The objects of the conspiracy were:

     a)     to make money by charging aliens for preparing fraudulent immigration forms;

     b)     to evade the immigration laws of the United States by assisting aliens to enter and remain in the United States by filing fraudulent immigration forms;

     c)     to evade the immigration laws of the United States by assisting aliens to work in the United States by filing fraudulent immigration forms;

     d)     to evade the immigration laws of the United States by assisting aliens with obtaining Lawful Permanent Resident status by filing fraudulent immigration forms;

     e)     to make materially false, fictitious, and fraudulent statements and representations in immigration documents in order to evade the immigration laws of the United States; and

     f)     to defraud the United States by interfering with and obstructing a lawful government function, that is, the regulation and control of immigration of aliens into and within the United States, by filing fraudulent immigration forms.

## Manner and Means of Accomplishing the Objects of the Conspiracy

22.     The manner and means by which the conspirators conducted the conspiracy included the following:

     a)     Conspirators would prepare and submit to the Virginia Employment

Commission fraudulent ETA-750 Applications, which included false descriptions of prior work experience.

     b)    Conspirators would prepare and submit to the Virginia Employment Commission false employment letters to support the ETA-750 Applications.

     c)    After receiving, through fraud, approved ETA-750 Applications, conspirators would prepare fraudulent I-140 Petitions for submission to the INS.

     d)    After receiving, through fraud, approved ETA-750 Applications, conspirators would prepare fraudulent I-485 Petitions for submission to the INS.

     e)    After receiving, through fraud, approved ETA-750 Applications, conspirators would prepare fraudulent I-765 Applications for submission to the INS.

     f)    After receiving, through fraud, approved ETA-750 Applications, conspirators would prepare fraudulent I-864 Affidavits for submission to the Department of State.

     g)    After receiving, through fraud, approved ETA-750 Applications, conspirators would prepare fraudulent DS-230 Applications for submission to the Department of State.

     h)    Conspirators would possess, obtain, accept and receive, through fraud, employment-based immigrant visas, labor certifications and Employment Authorization Documents.

     i)    Conspirators would generate false business payroll checks to falsely substantiate fraudulent immigration application documents.

     j)    Conspirators would charge aliens a fee for preparing fraudulent

8

immigration forms.

## Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the defendant

**MICHAEL MITRY HADEED, JR.** and other conspirators knowingly performed overt acts in

the Eastern District of Virginia and elsewhere, including the following:

### Alien - Marouf Arbid

1.      In or about December 1999, the defendant **MICHAEL MITRY HADEED, JR.**

met with Marouf Arbid to obtain legal advice regarding the process for obtaining a labor

certification, at which time defendant directed Arbid to obtain a letter falsely stating that Arbid

had prior experience working as a baker.

2.      In or about May 2000, the defendant **MICHAEL MITRY HADEED, Jr.,**

together with unindicted co-conspirators whose identities are known and unknown to the Grand

Jury, prepared and caused to be prepared a letter which falsely stated that Marouf Arbid was

previously employed as a baker at the Albert Abella & Cies Bakery in Beirut, Lebanon from

1989 to 1999.

3.      In or about May 2000, the defendant **MICHAEL MITRY HADEED, JR.,**

together with unindicted co-conspirators whose identities are known and unknown to the Grand

Jury, prepared and caused to be prepared a fraudulent ETA-750 Application for Marouf Arbid

which falsely stated that Arbid was previously employed as a baker at the Albert Abella & Cies

Bakery in Beirut, Lebanon from 1989 to 1999.

4.      In or about May 2000, to support the ETA-750 Application for Marouf Arbid, the

defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose

identities are known and unknown to the Grand Jury, attached and caused to be attached to the ETA-750 Application an employment letter, which falsely stated that Arbid was previously employed as a baker at the Albert Abella & Cies Bakery in Beirut, Lebanon from 1989 to 1999.

5.     In or about May 2000, defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Virginia Employment Commission the fraudulent ETA-750 Application and fraudulent letter of prior work experience relating to Marouf Arbid.

6.     On or about September 21, 2000, the defendant **MICHAEL MITRY HADEED, JR.,** submitted and caused to be submitted to the INS an I-140 Petition for Marouf Arbid. Included in the submission were Marouf Arbid's fraudulent ETA-750 Application and the false letter of prior work experience.

Alien - Ibrahim Fadl Alakwa

7.     In or about April 2000, the defendant **MICHAEL MITRY HADEED, JR.,** asked an employee of the King of Pita Bakery, an unindicted co-conspirator whose identity is known to the Grand Jury, to falsely claim that Ibrahim Fadl Alakwa, a client of defendant's and native of Yemen, worked at the King of Pita Bakery in order to obtain a Labor Certification.

8.     In or about April 2000, the defendant **MICHAEL MITRY HADEED, JR.,** told an employee of the King of Pita Bakery, an unindicted co-conspirator whose identity is known to the Grand Jury, that they could "make a lot of money" from Ibrahim Fadl Alakwa, and that defendant was willing to erase a large portion of a forty thousand dollar debt owed by this employee to defendant if the employee would sponsor Ibrahim Fadl Alakwa through the employment-based immigration process by falsely claiming that Ibrahim Fadl Alakwa worked at

10

the King of Pita Bakery.

9.      In or about April 2000, the defendant **MICHAEL MITRY HADEED, JR.,** directed Ibrahim Fadl Alakwa to obtain a letter falsely stating that Alakwa had prior experience working as a baker.

10.     In or about April 2000,  the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators, whose identities are both known and unknown and unknown to the Grand Jury, prepared and caused to be prepared a letter which falsely stated that Ibrahim Fadl Alakwa was previously employed as a baker at the Al-Jandool Sweets and Bakery in the Republic of Yemen from January 1, 1990 until September 5, 1994.

11.     In or about April 2000, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a fraudulent ETA-750 Application for Ibrahim Fadl Alakwa which falsely stated that Ibrahim Fadl Alakwa was previously employed as a baker at the Al-Jandool Sweets and Bakery in the Republic of Yemen from January 1, 1990 until September 5, 1994.

12.     In or about April 2000, to support the ETA-750 Application for Ibrahim Fadl Alakwa,  the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, attached and caused to be attached to the ETA-750 Application an employment letter, which falsely stated that Ibrahim Fadl Alakwa was previously employed as a baker at the Al-Jandool Sweets and Bakery in the Republic of Yemen from January 1, 1990 until September 5, 1994.

13.     On or about June 7, 2000, defendant **MICHAEL MITRY HADEED, JR.,**

11

together with unindicted conspirators whose identities are known and unknown to the Grand

Jury, submitted and caused to be submitted to the Virginia Employment Commission the

fraudulent ETA-750 Application and fraudulent letter of prior work experience relating to

Ibrahim Fadl Alakwa, as if it were a legitimate Application submitted on behalf of a legitimate

employee of the King of Pita Bakery, when in fact Ibrahim Fadl Alakwa had no legitimate

employment or offer of employment with, or intent to work for, the King of Pita Bakery.

14.    On or about October 17, 2000, the defendant **MICHAEL MITRY HADEED,**

**JR.,** submitted and caused to be submitted to the INS an I-140 Petition for Ibrahim Fadl Alakwa.

Included in the submission were Ibrahim Fadl Alakwa's fraudulent ETA-750 Application, the

false letter of prior work experience at the at the Al-Jandool Sweets and Bakery in the Republic

of Yemen, and a letter from defendant stating "[t]he need of this company for an employee with

qualifications of Mr. Alakwa is great.  As the enclosed letter of experience states, Mr. Alakwa is

a professional experienced baker."

15.    In or about September 2002, the defendant **MICHAEL MITRY HADEED, JR.,,**

together with unindicted co-conspirators whose identities are known and unknown to the Grand

Jury, prepared and caused to be prepared an I-485 Application for Ibrahim Fadl Alakwa to

register him as a permanent resident.

16.    On or about September 17, 2002, the defendant **MICHAEL MITRY HADEED,**

**JR.,** signed the I-485 Application relating to Ibrahim Fadl Alakwa.

17.  ·  On or about September 25, 2002, the defendant **MICHAEL MITRY HADEED,**

**JR.,** together with unindicted co-conspirators whose identities are known and unknown to the

Grand Jury, submitted and caused to be submitted an I-485 Application to the INS for Ibrahim

12

Fadl Alakwa to register him as a permanent resident.

18.    In or about January 2003, the defendant **MICHAEL MITRY HADEED, JR.,** directed Ibrahim Fadl Alakwa to visit the King of Pita Bakery so that he could accurately describe it if questioned by immigration authorities.

19.    In or about February 2003, Ibrahim Fadl Alakwa visited the King of Pita Bakery so that he could accurately describe it if questioned by immigration authorities.

20.    In or about February 2003, until in or about June 2004, an employee of the King of Pita Bakery – an unindicted co-conspirator whose identity is known to the Grand Jury – placed Ibrahim Fadl Alakwa on the payroll although he never actually worked there, and directed Alakwa to pick up a paycheck from the King of Pita Bakery every pay period, cash that check, and return the money to the King of Pita Bakery, all in an effort to falsely substantiate the false immigration applications and related documents.

21.    In or about September 2003, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-765 Application for Ibrahim Fadl Alakwa to extend his employment authorization.

22.    On or about September 12, 2003, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the CIS the I-765 Application relating to Ibrahim Fadl Alakwa.

23.    On or about December 22, 2003, the defendant **MICHAEL MITRY HADEED, JR.,** wrote a letter to CIS requesting a decision be made regarding the I-765 Application relating

to Ibrahim Fadl Alakwa.

24.     From on or about March 3, 2004 until on or about March 3, 2005, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, caused Ibrahim Fadl Alakwa to possess, obtain, accept and receive an Employment Authorization Document procured by means of fraud and false statements.

### Alien - Juana Pagoaga

25.     In or about January 2001, the defendant **MICHAEL MITRY HADEED, JR.,** together with other unindicted conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a letter – to be included with an ET-750 Application – which falsely stated that Juana Pagoaga was previously employed in the "Confectionary" at the Panificadora Real Bakery in Honduras from 1989 to 1994.

26.     In or about February 2001, the defendant **MICHAEL MITRY HADEED, JR.,** reviewed the letter purportedly from the Panificadora Real Bakery in Honduras relating to Juana Pagoaga, told unindicted co-conspirators, whose identities are known to the Grand Jury, that the letter was not sufficient, and directed that the letter be revised to add the title of baker and an additional year of experience at the Panificadora Real Bakery in Honduras.

27.     In or about February 2001, the defendant **MICHAEL MITRY HADEED, JR.,** together with other unindicted conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a letter which fraudulently stated that Juana Pagoaga was previously employed as a baker at the Panificadora Real Bakery in Honduras from 1989 to 1995.

28.   In or about April, 2001, to support the ETA-750 Application for Juana Pagoaga, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, attached to the ETA-750 Application an employment letter, which falsely stated that Juana Pagoaga was previously employed as a baker at the Panificadora Real Bakery in Honduras from 1989 to 1995.

29.   In or about April, 2001, an unindicted co-conspirator whose identity is known to the Grand Jury, working for and at the direction of the defendant **MICHAEL MITRY HADEED, JR.,** falsely indicated on the ETA-750 that Juana Pagoaga received a college diploma because it would look "better."

30.   On or about April 25, 2001, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted conspirators, whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Virginia Employment Commission the fraudulent ETA-750 Application and fraudulent letter of prior work experience relating to Juana Pagoaga.

31.   In or about November 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-140 Petition for Juana Pagoaga. Attached to the Petition were Juana Pagoaga's fraudulent ETA-750 Application and false letter of prior work experience from the Panificadora Real Bakery in Honduras.

32.   In or about November 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the INS an I-140 Petition for Juana Pagoaga.

15

Included in the submission were Juana Pagoaga's fraudulent ETA-750 Application and false letter of prior work experience at the Panificadora Real Bakery in Honduras.

33.     In or about February 2004, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-485 Application for Juana Pagoaga to register her as a permanent resident.

34.     On or about February 9, 2004, the defendant **MICHAEL MITRY HADEED, JR.,** signed the I-485 Application relating to Juana Pagoaga.

35.     On or about February 9, 2004, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the CIS an I-485 Application for Juana Pagoaga to register her as a permanent resident.

36.     In or about February 2004, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-765 Application for Juana Pagoaga to obtain employment authorization.

37.     On or about February 9, 2004, the defendant **MICHAEL MITRY HADEED, JR.,** signed the I-765 Application relating to Juana Pagoaga.

38.     On or about February 9, 2004, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the CIS the I-765 Application relating to Juana Pagoaga.

16

39.    From on or about May 18, 2004 until on or about May 18, 2005, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, caused Juana Pagoaga to possess, obtain, accept and receive an Employment Authorization Document procured by means of fraud and false statements.

<u>Alien - Jean Claude Sakr</u>

40.    In or about June 2002, Jean Claude Sakr met with the defendant **MICHAEL MITRY HADEED, JR.** to obtain legal advice about the process for obtaining political asylum. The defendant responded that it would be "easier" to remain in the United States if he sought an employment-based immigrant visa, and directed Sakr to an employee of the King of Pita Bakery, an unindicted co-conspirator whose identity is known to the Grand Jury, to begin the fraudulent labor certification process.

41.    In or about June 2002, the defendant **MICHAEL MITRY HADEED, JR.**, directed Jean Claude Sakr to obtain a letter falsely stating that Sakr had prior experience working as a baker.

42.    In or about October 2002, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a letter which falsely stated that Jean Claude Sakr was previously employed as a baker at the Boulangerie Kairouz in Beirut, Lebanon from 1996 to 2000.

43.    In or about November 2002, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand

17

Jury, prepared and caused to be prepared a fraudulent ETA-750 Application for Jean Claude Sakr which falsely stated that Jean Claude Sakr was previously employed as a baker at the Boulangerie Kairouz in Beirut, Lebanon from April 1996 to March 2000.

44.     In or about November 2002, to support the ETA-750 Application for Jean Claude Sakr, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, attached and caused to be attached to the ETA-750 Application an employment letter, which falsely stated that Jean Claude Sakr was previously employed as a baker at the Boulangerie Kairouz in Beirut, Lebanon from 1996 to 2000.

45.     On or about November 15, 2002, defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Virginia Employment Commission the fraudulent ETA-750 Application and fraudulent letter of prior work experience relating to Jean Claude Sakr.

46.     On or about December 23, 2002, the defendant **MICHAEL MITRY HADEED, JR.,** submitted and caused to be submitted to the INS an I-140 Petition for Jean Claude Sakr. Included in the submission were Jean Claude Sakr's fraudulent ETA-750 Application and the false letter of prior work experience at the Boulangerie Kairouz in Beirut, Lebanon.

47.     In or about December 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-485 Application for Jean Claude Sakr to register him as a permanent resident.

18

48.     On or about December 7, 2002, the defendant **MICHAEL MITRY HADEED, JR.,** signed the I-485 Application relating to Jean Claude Sakr.

49.     On or about December 23, 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted an I-485 Application to the INS for Jean Claude Sakr.

<u>Alien - Charbel Elias Freifer</u>

50.     In or about October 2002, the defendant **MICHAEL MITRY HADEED, JR.,** directed Charbel Elias Freifer to obtain a letter falsely stating that Friefer had prior experience working as a baker in order to begin the labor certification process.

51.     In or about November 2002, defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a letter – to be included with an ET-750 Application – which falsely stated that Charbel Elias Friefer was previously employed as a baker at the Al Najah Bakery in Lebanon from March 1997 to August 2001.

52.     In or about December 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a fraudulent ETA-750 Application for Charbel Elias Friefer which falsely stated that Charbel Elias Friefer was previously employed as a baker at the Al Najah Bakery in Lebanon from March 1997 to August 2001.

53.     In or about December 2002, to support the ETA-750 Application for Charbel Elias Friefer, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted

co-conspirators whose identities are known and unknown to the Grand Jury, attached and caused to be attached to the ETA-750 Application an employment letter, which falsely stated that Charbel Elias Friefer was previously employed as a baker at the Al Najah Bakery in Lebanon from March 1997 to August 2001.

54.     On or about December 18, 2002, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted conspirators, whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Virginia Employment Commission the fraudulent ETA-750 Application and fraudulent letter of prior work experience relating to Charbel Elias Friefer.

55.     In or about January 2003, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-140 Petition for Charbel Elias Friefer.

56.     In or about January 2003, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the INS an I-140 Petition for Charbel Elias Friefer. Included in the submission were Charbel Elias Friefer's fraudulent ETA-750 Application and false letter of prior work experience at the Al Najah Bakery.

57.     In or about November 2003, the defendant **MICHAEL MITRY HADEED, JR.,** together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared an I-864 Affidavit seeking an immigrant visa for Charbel Elias Friefer.

58.     On or about November 19, 2003, the defendant **MICHAEL MITRY HADEED,**

JR., signed the I-864 Affidavit seeking an immigrant visa for Charbel Elias Friefer.

59.     In or about November 2003, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Department of State an I-864 Affidavit seeking an immigrant visa for Charbel Elias Friefer.

60.     In or about September 2003, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, prepared and caused to be prepared a DS-230 Form seeking an immigrant visa and alien registration for Charbel Elias Friefer which falsely stated that Friefer was at the time employed as a baker in Lebanon.

61.     On or about November 20, 2003, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, submitted and caused to be submitted to the Department of State a DS-230 Form seeking an immigrant visa and alien registration for Charbel Elias Friefer which falsely stated that Friefer was at the time employed as a baker in Lebanon.

62.     On or about July 1, 2004, the defendant **MICHAEL MITRY HADEED, JR.**, together with unindicted co-conspirators whose identities are known and unknown to the Grand Jury, sent and caused to be sent to the Department of State an email to schedule an interview for Charbel Elias Friefer to obtain an immigrant visa and alien registration.

(**Conspiracy**, in violation of Title 18, United States Code, Section 371.)

## COUNT TWO
### (Material False Statement)

1.      Paragraphs 1 through 19 of Count One of this Indictment are specifically

re-alleged and incorporated as though set forth fully in this count.

2.      On or about November 20, 2003, within the Eastern District of Virginia and

elsewhere, the defendant **MICHAEL MITRY HADEED, JR.**, did knowingly and willfully

cause to be made a materially false, fictitious, and fraudulent statement and representation in a

matter within the jurisdiction of the United States Department of State, an agency within the

executive branch of the United States, in that the defendant submitted and caused to be submitted

a Form DS-230 which stated that alien Charbel Elias Freifer was previously employed as a baker

at the Al Najah Bakery in Beirut, Lebanon from March 1997 to August 2001, when in truth and

in fact, the defendant knew at the time the statement was made that it was false.

(**Material False Statement**, in violation of Title 18, United States Code, Section 1001; **Aiding
and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code,
Section 2.)

## COUNT THREE
### (Immigration Fraud)

1.      Paragraphs 1 through 19 are specifically re-alleged and incorporated as though set

forth fully in this count.

2.      From on or about March 3, 2004 until on or about March 3, 2005, within the

Eastern District of Virginia and elsewhere, the defendant **MICHAEL MITRY HADEED, JR.**,

did knowingly possess, obtain, accept and receive a document required by the immigration laws

and the regulations prescribed thereunder, that is, an Employment Authorization Document in the

name of Ibrahim Fadl Alakwa, which the defendant knew to have been procured by means of a

false claim and statement and to have been otherwise procured by fraud and unlawfully obtained.

**(Immigration Fraud**, in violation of Title 18, United States Code, Section 1546(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Immigration Fraud)

1.      Paragraphs 1 through 19 are specifically re-alleged and incorporated as though set

forth fully in this count.

2.      From on or about May 18, 2004 until on or about May 18, 2005, within the

Eastern District of Virginia and elsewhere, the defendant **MICHAEL MITRY HADEED, JR.,**

did knowingly possess, obtain, accept and receive a document required by the immigration laws

and the regulations prescribed thereunder, that is, an Employment Authorization Document in the

name of Juana Pagoaga, which the defendant knew to have been procured by means of a false

claim and statement and to have been otherwise procured by fraud and unlawfully obtained.

**(Immigration Fraud**, in violation of Title 18, United States Code, Section 1546(a); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

Michael B. Mukasey
Attorney General for the United States

By: _____
Anthony Asuncion
Special Attorney to the Attorney
General for the United States

24